IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS WILSON | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 20-5003 |
| WARDEN, FDC PHILADELPHIA | : | |

## **MEMORANDUM**

**SURRICK, J.**                                                                                                            **JUNE 23, 2021**

Before the Court is Dennis Wilson's *Pro Se* Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. For the reasons that follow, Wilson's Application will be denied.

## **I.     BACKGROUND**

In this habeas case, Petitioner Dennis Wilson contends his due process rights were violated when he lost good credit time as a sanction for failing to timely return to his residential reentry center after work. At the time of the underlying incident, Dennis Wilson was housed at a Community Corrections Center in Philadelphia, Pennsylvania known as the Philadelphia Residential Reentry Center (RRC) for prisoners pending release. (*See* Gov't Ex. A, ECF No. 8.) Wilson was granted work-release from the facility. (*See* Incident Report No. 3390453, Gov't Ex. B, ECF No. 8.)

On April 15, 2020, at 8:13 p.m., Wilson signed out of the facility on an approved work release. (*Id.*) The same day, another facility resident returned at 8:45 p.m. and advised the staff that he and Wilson were sent home early by their supervisor.[1] (*Id.*) That resident advised that he had a ride back to the facility, but that Wilson would be taking public transportation to get back.

---

[1] The identity of the resident is known to the Court but his name is not included here for the resident's protection.

(*Id.*)  At approximately 1:00 a.m., facility employee Lt. Kamara called Wilson to find out where he was, and Wilson said that he stayed at work but was getting ready to leave.  (*Id.*)

At 1:15 a.m., Wilson called staff to say that he was getting on public transit.  (*Id.*)  At 1:36 a.m. Wilson called again to say that he had just arrived at Frankford Terminal.  (*Id.*)  At 2:15 a.m. Wilson called to say he was on his way and heading up Erie Avenue.  (*Id.*)  At approximately 2:42 a.m., Kamara called Wilson for another update, but Wilson did not answer the phone.  (*Id.*)  At approximately 2:54 a.m., Kamara called Wilson again and Wilson advised that he was walking on Castor and Erie because his bus never came.  (*Id.*)  Kamara told Wilson to call every fifteen to twenty minutes to keep staff updated.  (*Id.*)  Wilson never called again.  (*Id.*)  Staff called Wilson at 3:35, 4:00, and 4:10 a.m. but Wilson did not answer.  (*Id.*)  At 4:30 a.m., staff notified the facility director and began the escape checklist.  (*Id.*)  The escape checklist was completed at 4:54 a.m.  (*Id.*)  The Incident Report, Number 3390453, was dated April 16, 2020 at 8:00 a.m.  (*Id.*)  The Incident Report charged Wilson with Escape, Code 102.  (*Id.*)

Part III of the Incident Report, labeled Investigation, showed that at 10:00 a.m. on April 16, 2020, Wilson was still in escape status and not present so his statement was taken *in absentia*.  (*Id.*)  The investigator reached out to Wilson's emergency contact, his sister, at approximately 9:12 a.m.  (*Id.*)  Wilson's sister said that Wilson texted her at 11:08 p.m. on April 15, 2020, to say he was on the train and on his way back to the facility from work.  (*Id.*)  The staff at Wilson's work location, ACCU Staffing, told RRC facility staff that Wilson was turned away from work at 10:00 p.m. on April 15, 2020.  (*Id.*)  Based on the above evidence, the investigator found that "it is evident that Wilson is guilty as charged."  (*Id.*)  The matter was referred to the Center Discipline Committee for a hearing.  (*Id.*)

The Center Discipline Committee held a hearing *in absentia* on April 16, 2020, at 3:00 p.m. (*Id.*) The Center Discipline Committee found that Wilson had committed escape and recommended that if the Discipline Hearing Officer (DHO) found Wilson committed the prohibited act of escape, then they should impose a loss of available good conduct time and denial of a future RRC placement for one year. (*Id.*) The Center Discipline Committee then referred the charge to the DHO for a hearing. (*Id.*)

Wilson had not returned by the time the DHO hearing took place on April 20, 2020. (*See* Gov't Ex. A.) Accordingly, the DHO hearing was held *in absentia*. (*Id.*) The Discipline Hearing Officer considered the statement from Wilson's sister and from his employer in addition to the call logs and found that the act was committed as charged. (*Id.*) As a sanction, the DHO took away 41 days of Wilson's good conduct time and 455 days of non-vested good conduct time. (*Id.*)

According to Respondent, Wilson returned in the afternoon on April 20, 2020, after the DHO hearing had concluded. (Gov't Opp'n, ECF No. 8.) Wilson appealed the sanctions to the Bureau of Prisons' Northeast Regional Office on May 15, 2020. (*Id.*) On July 22, 2020, the Northeast Regional Office partially granted the appeal and remanded the Incident Report for a rehearing. (*Id.*)

On September 16, 2020, Wilson was served with a copy of the Incident Report at 2:00 p.m. and advised of his right to remain silent. (Gov't Ex. C.) Wilson did not wish to make a statement during the investigation. (*Id.*) Incident Report Number 3390453 was referred to the Unit Discipline Committee once the investigation concluded. (*Id.*)

On September 17, 2020, at 3:00 p.m., the Unit Discipline Committee held an Initial Hearing for Incident Report Number 3390453. (Gov't Ex. C.) Wilson did not make any

3

comments at the hearing. (*Id.*) The Committee recommended the "same sanctions as absentia hearing" if the DHO found Wilson committed the prohibited conduct. (*Id.*) The Committee referred the charges to the DHO for further hearing. (*Id.*) Wilson was advised of his rights concerning DHO hearings at the time of the hearing. (Gov't Ex. D.) On the Notice of Discipline Hearing before DHO Form, Wilson checked that he did not wish to have a staff representative. (Gov't Ex. E.) Wilson checked that he did wish to have witnesses and that he wished to call Kamara from RCC security as a witness. (*Id.*) A handwritten note states that the portion of the form referring to what Kamara could testify to was not filled out and "refused to sign" and that Kamara was "not called due to . . . report." (*Id.*) Respondent says Kamara was not called because he was the reporting officer. (*Id.*) The form states that notice of a hearing before the DHO was given to Wilson at 3:00 p.m. on September 17, 2020. (*Id.*)

Wilson filed the instant Application for Habeas Corpus on October 5, 2020. (Application, ECF No. 1.) Wilson writes that he is challenging the loss of good time in a prison disciplinary proceeding conducted by a Designated Hearing Officer on behalf of the Bureau of Prisons. (*Id.*) Under date of decision, Wilson's response is "waiting." (*Id.*) Wilson argues that the result of the DHO hearing is "presumably loss of 41 days of Good Time and forfeit of 455 days earned Good Time." (*Id.*) Wilson checked off that he appealed to the Regional Director and General Counsel. (*Id.*) However, Wilson also argues that exhaustion is not required because it is futile as "Petitioner is currently suffering irreparable injury due to the Due Process violations raised herein." (*Id.*)

After Wilson's filing, on October 30, 2020, the DHO hearing took place with Wilson present. (*See* Gov't Ex. F.) The DHO form states that Wilson waived his right to witnesses. (*Id.*) During the hearing, Wilson stated "I turned myself in like a day or a day and a half I didn't

4

get arrested or anything like that." (*Id.*) The DHO found that the greater weight of evidence indicated that Wilson escaped by failing to return from a work assignment and staying in escape status for more than four hours. (*Id.*) The DHO relied on Kamara's report as the reporting officer, the evidence from the RRC investigation, and Wilson's own partial admission during the hearing. (*Id.*) The DHO sanctioned Wilson by taking away 41 days of good conduct time and 455 days of non-vested good conduct time. The DHO also removed him from the program for six months. (*Id.*)

The DHO Report also includes a Section VIII titled Appeal Rights. This section has an X to indicate the following was completed:

> The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

(*Id.*)

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Third Circuit has "consistently applied an exhaustion requirement to claims brought under § 2241" even though "there is no statutory exhaustion requirement attached to § 2241." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Requiring administrative exhaustion: "(1) allow[s] the appropriate agency to develop a factual record and apply its expertise, facilitat[ing] judicial review; (2) permit[s] agencies to grant the relief requested conserv[ing] judicial resources; and (3) provide[s] agencies the opportunity to correct their own errors foster[ing] administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996). If a petitioner fails to exhaust administrative remedies, their federal habeas

5

corpus application is generally barred from review "absent a showing of cause and prejudice[.]" *Id.* at 761.

The Bureau of Prisons' administrative remedy procedure is set forth at 28 C.F.R. § 542.10-.18 (2013). There is a tiered system for allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.* § 542.10(a). An appeal of a DHO decision is initially submitted to the Regional Director for the region where the inmate is located. *Id.* § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* § 542.15. The final tier is an administrative appeal to the General Counsel. *Id.*

Here, Wilson appealed the initial *in absentia* hearings of the Center Discipline Committee and DHO to the Regional Director. Wilson's appeal was then partially granted by the Regional Director and remanded to the Unit Discipline Committee. The Unit Discipline Committee held a second hearing in Wilson's presence on September 17, 2020. It again referred the charge to the DHO. Wilson was notified that the charge was referred to the DHO on September 17, 2020. Wilson filed this appeal before the DHO hearing took place on October 30, 2020. Respondent advises that Wilson has not appealed the final DHO decision to the Regional Director as of Respondent's filing, December 28, 2020. Neither party has filed anything additional to indicate otherwise. As such, Wilson's Application is procedurally defective.

"[A]n inmate's unjustified failure to pursue administrative remedies results in procedural default warranting decline of judicial review." *Pittman v. Zickefoose*, No. 10-5057, 2010 U.S. Dist. LEXIS 143295, at *9-10 (D.N.J. Oct. 20, 2010). Wilson argues that exhaustion is not required "under the doctrine of futility" because he is suffering irreparable injury by the loss of

his good time credit. He argues that "Hearings to take Petitioner's Good Time credit were conducted AFTER Good Time was taken and AFTER Petitioner's scheduled date to go home." (ECF No. 1.) "Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates that he will be unsuccessful in his administrative appeals . . . ." *Black v. Ortiz*, No. 18-11823, 2021 U.S. Dist. LEXIS 5515, at *7 (D.N.J. Jan. 12, 2021) (quoting *Malvestuto v. Martinez*, No. 09-1339, 2009 U.S. Dist. LEXIS 78231, at *3 (M.D. Pa. Sept. 1, 2009)) (collecting cases).

The initial hearings were conducted without Wilson being present because he was in escape status. There is nothing in the record to indicate that action was taken against Wilson's good time credit before the hearings occurred. The record before us reflects that Wilson has not exhausted administrative remedies and has not appealed the final DHO decision. Wilson has not presented cause and actual prejudice to justify this procedural defect.

B. **Due Process**

Even if we found that Wilson had exhausted administrative remedies, his Application would still be denied. The record supports Respondent's adherence to the BOP regulations and Wilson's due process rights.

Good time credits are considered a liberty interest and, accordingly, prisoners are guaranteed certain due process protections where a disciplinary hearing may result in loss of such credits. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974); *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (per curiam) (holding that a prisoner can petition for habeas corpus pursuant to 28 U.S.C. § 2241 for loss of good time credits because the loss affects the duration of the prisoner's sentence). "Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." *Denny v.*

*Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013). Thus, "[w]here a prison disciplinary hearing may result in the loss of good time credits, . . . an inmate must receive: (1) advanced written notice of the disciplinary charges; (2) an opportunity . . . to call witnesses and present evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).

*Wolff* provides five due process protections that must be afforded to federal prisoners when a prison disciplinary proceeding may result in the loss of good time credit. Prisoners subject to potential loss of good-time credit must be afforded: (1) written notice of the charge(s) against him; (2) a period of at least 24 hours after the notice to prepare a defense before the disciplinary hearing; (3) the right to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (4) the ability to seek help from a fellow prisoner or staff if the prisoner is illiterate or the issue is so complex that he will be unlikely to be able to "collect and present the evidence necessary for an adequate comprehension of the case"; and (5) a written statement by the factfinders as to the evidence and reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563-70; *see also* C.F.R. § 541.8 (Discipline Hearing Officer hearing rights afforded to petitioners).

Wilson does not argue that he was not timely presented with the Incident Report.[2] Moreover, the record reflects that Wilson received advanced written notice of the charges against him in the form of the Incident Report on September 16, 2020. (Gov't Ex. C.) He also received

---

[2] The DHO Report appears to have a misstatement at Part I, Notice of Charge(s), where it states that advanced written notice of the charge (copy of Incident Report) was given to Wilson on 4/16/2020 at 8:00 a.m. (Gov't Ex. F.) Wilson was still in escape status at this time. However, given the remainder of the record as discussed herein, this error does not appear to be material or to have affected Wilson's due process rights.

8

written notice on September 17, 2020, that there would be a hearing before the DHO and notice of the charge of escape. (Gov't Ex. E.) Therefore, Wilson had a period longer than 24 hours to prepare a defense for the DHO hearing which took place on October 30, 2020. In fact, Wilson signed a written waiver of the 24-hour notice on September 17, 2020, upon being advised of his rights. (Gov't Ex. D.) According to the DHO hearing report, the written report of findings was given to Wilson afterward. (Gov't Ex. F.)

Although Wilson's proposed witness was not available to testify at the initial hearing because he was the reporting officer, this appears to comport with BOP policy. "The Court would be remiss to second guess the policy decision regarding prohibiting certain kinds of witnesses in DHO hearings in light of the Supreme Court's guidance in *Wolff*." *Gilmore v. Warden*, No. 19-262, 2020 U.S. Dist. LEXIS 87643, at *11-13 (M.D. Pa. May 19, 2020). In *Wolff*, the Supreme Court clarified that the right to call witnesses is not without limits:

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority . . . . The operation of a correctional institution is at best an extraordinary undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

*Wolff*, 418 U.S. at 566-67. Wilson waived his right to a witness at the DHO hearing. (Gov't Ex. F.) He declined to make a statement about the incident report but did state "I turned myself in in like a day or a day and a half I didn't get arrested or anything like that." (*Id.*) Wilson also waived a staff representative and does not argue he is within the class of persons who should be afforded such a representative. (*Id.*) The BOP afforded Wilson all the due process rights required under *Wolff*.

9

Nevertheless, Wilson argues that his due process rights were violated because his anticipated release date was in August 2020 – Respondent confirms it was August 30, 2020 – and the DHO hearing where he was present did not occur until after this date. However, the first DHO hearing occurred on April 20, 2020. According to BOP regulations, "[i]f you escape or are otherwise absent from custody, the DHO will conduct a hearing in your absence at the institution where you were last confined." 28 C.F.R. § 541.8(e)(4). The BOP followed this regulation, and could not have given Wilson notice at the time because he was physically not present. Upon his return, Wilson was present for the in-person hearing on September 17, 2020, following the guidelines provided in the BOP's internal program statement. *See* Program Statement 5270.09, Inmate Discipline Program:

> When an inmate returns to custody following an absence during which sanctions were imposed by the DHO, the Warden has the charges reheard before the DHO, ordinarily within 60 days after the inmate's arrival at the institution to which he/she is designated after return to custody, following an appearance before the UDC at that institution.

Program Statement 5270.09, *Inmate Discipline Program* (updated Nov. 18, 2020), https://www.bop.gov/policy/progstat/5270.90_cn1.pdf (accessed June 14, 2021). Respondent states that the hearing took place at FDC Philadelphia rather than Wilson's designated institution because transfers were halted due to the pandemic. Wilson does not challenge the location or additional time taken by the BOP before the in-person hearing or DHO hearing, and we do not find these factors unreasonable given the institutional challenges presented by COVID-19 in the past year.

Moreover, the Third Circuit has found that due process rights are not violated solely by hearings conducted *in absentia*. *See Hatten v. Lewisburg*, 546 Fed. App'x 79, 81 (3d Cir. 2013) (finding no due process violation where petitioner was removed from hearing and it continued *in*

*absentia* after petitioner refused to participate in the proceedings, raised his voice, and alleged violations of due process because petitioner's removal was related to institutional goal of maintaining order and authority of the hearing panel). The Supreme Court has held that any deprivation of an inmate's rights must be "logically related to 'institutional safety or correctional goals'" to comport with due process. *Ponte v. Real*, 471 U.S. 491, 497 (1985).

      The DHO's findings made as a result of the *in absentia* hearing have not been overturned at any point, and we can ascertain that the hearing was held to further the "basic correctional goal of institutional order." *Battle v. Barton*, 970 F.2d 779, 782 (11th Cir. 1992). We remain mindful that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). In fact, having the hearing held *in absentia* "may add to the essential fairness of the disciplinary process by preserving a record of the alleged events at a time when details are fresh, when memories have not yet faded, and when any witnesses are still available to provide necessary information." *Malik v. Wilkerson*, No. 93-5271, 1994 U.S. Dist. LEXIS 2100, at *12 (E.D. Pa. Mar. 1, 1994). As such, an *in absentia* hearing supports a finding that a prisoner's due process rights were not violated because it "may assure that the factfinding process is fair and reliable because it occurs at a time when the DHO is best able to assess the sufficiency of evidence and the credibility of witnesses." *Id.* Wilson's due process rights were not violated by the disciplinary action taken after the *in absentia* DHO hearing, the results of which and the discipline imposed at which were affirmed at the in-person hearing where Wilson was present.

### C. The DHO's Conclusion was Supported by "Some Evidence"

The disciplinary decision must also be supported by "some evidence," meaning "any evidence in the record that could support the conclusion reached by the disciplinary board." *See Hill*, 472 U.S. at 455-56. We are satisfied that the record shows that "some evidence" supported the DHO's findings. Wilson's own testimony at the in-person DHO hearing supports the fact that he was absent from custody for more than four hours. This evidence coupled with the investigation results, including the record of institutional staff calls to and from Wilson and conversations with the staff at Wilson's work location and with Wilson's sister make this conclusion decisive.

### III. CONCLUSION

Based on the foregoing, Wilson's Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 will be denied both for procedural failure to exhaust administrative remedies and substantive failure to show a deprivation of Wilson's due process rights.

An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**